UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L.R.P., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, Administrator of Mesa Verde ICE Processing Center; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01464-KES-SKO (HC) <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS <br><br> Docs. 1, 2 |

After petitioner J.L.R.P. re-entered the United States in November 2021, he was initially detained by immigration officials but was then released on an order of supervision pending further proceedings including a credible fear interview. On October 6, 2025, Immigration and Customs Enforcement ("ICE") agents revoked his order of supervision and re-detained him, although petitioner had not been provided with a credible fear interview and the government does not allege that he violated any condition of his release. After being detained for nearly a month with no explanation as to why his release had been revoked, petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order. Docs. 1, 2.

For the reasons explained below, the Court finds that ICE violated its own regulations and the Due Process Clause in its re-detention of petitioner. Accordingly, the petition for writ of habeas corpus is granted.

1

I. **Background**[1]

   a. **Petitioner's Initial Entry, Release, and Re-Detention**

Petitioner is a citizen of Venezuela who was ordered removed from the United States in October 2020. *See* Doc. 9-1, Ex. 2. He re-entered the United States on November 11, 2021, and was encountered by immigration officials shortly after entry. Doc. 1 at ¶ 6. Immigration officials detained him and provided him with a notice of intent to reinstate his prior removal order. Doc. 1 at ¶ 6; Doc. 9-1, Ex. 3. However, after he expressed a fear of returning to Venezuela, immigration officials released him on an order of supervision, pending an interview with an asylum officer as to whether he had a credible fear of persecution. Doc. 1 at ¶ 6; Doc. 9-1 at 33–34 (noting that petitioner was "released pending a credible fear interview with" an asylum officer). The regulations that authorize ICE to release a noncitizen who has been ordered removed provide:

> Before making any . . . decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
>
> 1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
>
> 2) The detainee is presently a non-violent person;
>
> 3) The detainee is likely to remain nonviolent if released;
>
> 4) The detainee is not likely to pose a threat to the community following release;
>
> 5) The detainee is not likely to violate the conditions of release; and
>
> 6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e); *see also* 8 C.F.R. §§ 241.4(h)(3), (i)(6) (noting that the Executive Associate Commissioner and district director "must [also] be able to reach the conclusions set forth in paragraph (e) of this section" "[b]efore making any decision to release a detainee").

---

[1] The facts set out in this section come from petitioner's verified petition and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

Following his release, petitioner settled in Daly City, California with his wife and father, and he and his family built a life there. Doc. 1 at ¶ 8. Petitioner was issued an employment authorization card, and he has worked as a delivery driver for multiple companies. *See* Doc. 1 at ¶¶ 8, 10; Doc. 2-4 at 10. He financially supports his family in the United States, as well as his ten-year-old son who lives in Venezuela with his mother. Doc. 1 at ¶ 8. In addition, his father has significant medical needs due to a recent heart attack, and petitioner is responsible for his care. *Id.* Petitioner is currently enrolled and completing an English language program at San Francisco City College. *Id.* Respondents do not dispute petitioner's evidence that he has fully complied with the terms of his order of supervision and that he has maintained a clean criminal record while in the United States. *See* Doc. 1 at ¶ 7; Doc. 9.

On October 6, 2025, petitioner and his wife both reported for their scheduled check-ins with ICE; petitioner's wife is also a Venezuelan citizen and has a pending asylum application. Doc. 1 at ¶¶ 8–10. An ICE agent instructed petitioner's wife to leave the building and told petitioner to report to another floor. *Id.* ¶ 10. Petitioner followed those instructions, and when he arrived at the designated floor, ICE agents arrested him. *Id.* ¶ 11. Petitioner indicates that the ICE agents told him that they were initiating the "detention process[,]" but they did not give him any specific reason as to why he was being detained. *Id.* ICE agents shackled petitioner at the hands and feet and transported him to a holding cell, where he was held overnight. *Id.* ¶ 12. The following day, he was transported to Mesa Verde ICE Processing Center in Bakersfield, California, where he remains detained. *Id.* ¶¶ 13–18.

After being detained, petitioner was provided with a credible fear interview with an asylum officer, who found that petitioner had a credible fear of returning to Venezuela. *Id.* ¶ 20; Doc. 9-1, Jerome Decl. at ¶ 11. Petitioner was referred on October 28, 2025 for proceedings before an immigration judge for a determination under 8 C.F.R. § 208.31(e) as to whether petitioner was entitled to withholding of removal, and his initial hearing in immigration court was scheduled for November 12, 2025. *See* Doc. 9-1, Ex. 6; Doc. 9-1, Jerome Decl. at ¶¶ 11–12; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021) (explaining the process for withholding-only proceedings).

**b. Procedural History**

On November 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. He argues in both of those filings that ICE failed to comply with its regulations governing the revocation of an order of supervision when it re-detained him, and that the Due Process Clause required that he be provided a hearing prior to any re-detention. *See* Docs. 1, 2. The Court set a briefing schedule and provided notice to the parties that it intended to rule directly on the petition for writ of habeas corpus. Doc. 5; *see* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."); *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously). Respondents filed an opposition to the petition on November 10, 2025, Doc. 9, and petitioner filed a reply on November 11, 2025, Doc. 11.

On November 8, 2025, ICE served petitioner with a notice of revocation of release. Doc. 9-1, Muro Decl. at ¶ 3; Doc. 9-1 at 33–34. Although the notice of revocation of release is dated October 6, 2025, ICE did not serve it on petitioner until six days *after* petitioner filed his habeas petition and over a month after ICE detained him. *See id.* The notice of revocation states:

> ICE has determined that you can be expeditiously removed from the United States (U.S.) pursuant to the outstanding order of removal against you. On November 10, 2021, you were served a Notice of Intent to Reinstate Prior Order, Form I-871, and you claimed fear of returning to your country of citizenship. You were released on an Order of Supervision pending a reasonable fear interview with U.S. Citizenship and Immigration Services (USCIS). As of October 6, 2025, you have no petitions or applications pending with the service that would prevent your removal from the U.S. and your removal from the U.S. is now imminent.

Doc. 9-1 at 33–34. The notice is in English. *See id.* The record does not reflect whether the document was translated into Spanish for petitioner. Respondents offer no explanation for why ICE detained petitioner for a month without providing him with the notice of revocation, or why

4

1    ICE provided the notice to petitioner only after he filed a habeas petition.

2    The declaration of deportation officer Muro states that ICE also "provided [petitioner] the
3    opportunity to respond to the reasons for revocation of his order of supervision stated in the
4    notification letter." Doc. 9-1, Muro Decl. at ¶ 3. Respondents include as an exhibit a document
5    titled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R.
6    § 241.4(l); 8 C.F.R. § 241.13(i)." Doc. 9-1 at 35. That document states that an initial informal
7    interview was conducted on November 8, 2025, and that petitioner gave an oral response. *See id.*
8    Petitioner's oral response is handwritten in Spanish, apparently by the interviewing ICE agent;
9    respondents do not provide an English translation of the response.[2] *See id.*

10   **II.     Legal Standard**

11   The Constitution guarantees the availability of the writ of habeas corpus "to every
12   individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)
13   (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in
14   custody upon the legality of that custody, and . . . the traditional function of the writ is to secure
15   release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas
16   corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the
17   Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has
18   served as a means of reviewing the legality of Executive detention, and it is in that context that its
19   protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a
20   district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*
21   *Davis*, 533 U.S. 678, 687 (2001).

22   **III.    Discussion**

23   Petitioner argues that ICE's revocation of his release violated its own regulations
24   governing how and when ICE may revoke release, as well as the Due Process Clause of the Fifth
25   Amendment. *See* Doc. 1 at ¶¶ 107–30. The Court addresses those arguments below.

---

[2] The handwritten notation states: "Cumpli con todas ruls citas programadas con el ICE en tiempo fecha desde mi ingreso al pais." Doc. 9-1 at 35. According to Google translate, that translates to: "I complied with all scheduled appointments with ICE on time since my entry into the country."

5

### a. ICE Did Not Have Proper Grounds to Detain Petitioner Under the Governing Regulations.

Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed, detained, and then released after ICE is unable to execute the order of removal. Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[3] 8 C.F.R. § 241.13(i)(2).

Numerous courts have found that when ICE revokes the release of a noncitizen who has been ordered removed to effectuate that noncitizen's removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." *E.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025). *Nguyen v. Hyde*, for example, dealt with a noncitizen who had been ordered removed to Vietnam, released after ICE was unable to remove him, and then had his release revoked on the grounds that there were, according to ICE, changed circumstances such that he could now be removed to Vietnam. *Nguyen*, 788 F. Supp. 3d at 146–149. The *Nguyen* court first explained the framework set out in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which dealt with a noncitizen who had been detained and never released following a final order of removal. *Zadvydas*, 533 U.S. at 701. In that context, the Supreme Court held that once an alien has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

The *Nguyen* court found that that burden-shifting framework from *Zadvydas* does not apply when a noncitizen has been ordered removed, released, and re-detained. *Nguyen*, 788 F.

---

[3] The regulation also provides for revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision," 8 C.F.R. § 241.13(i)(1). Respondents do not allege that this provision of the regulation applies and they do not allege that petitioner violated any condition of his release; respondents do not dispute petitioner's assertion that he has complied with the order of supervision for over four years. *See* Doc. 9.

Supp. 3d at 146–149. The court explained that [t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*[;] [t]his case is about ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." *Id.*; *cf. Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired.").

As the *Nguyen* court explained, the regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed. *Id.*; *Escalante*, 2025 WL 2206113, at *3 ("After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for . . . those who are re-detained upon revocation of their supervised release." (citing 8 C.F.R. § 241.13)). In *Escalante*, which also dealt with a noncitizen who had been ordered removed, released, and then re-detained, the court noted that:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled "*Service determination under 8 C.F.R. 241.13*[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

*Escalante*, 2025 WL 2206113, at *1–3.

Those regulations indicate that, when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." *Escalante*, 2025 WL 2206113, at *3. As the district court in *Escalante* found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." *Escalante*, 2025 WL 2206113, at *3. Other courts have also reached this conclusion. *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn.

Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); *see Nguyen*, 788 F. Supp. 3d at 150.  Therefore, the Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.

In their opposition, respondents do not identify any changed factual circumstance concerning petitioner, nor do they point to any facts indicating that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future.  When immigration authorities released petitioner in 2021, they could not reinstate his prior removal order because he had expressed a fear of persecution if removed to Venezuela.  Doc. 9-1 at 33; *see* 8 C.F.R. § 241.8(e) (setting out the "[e]xception" to immigration authorities' ability to reinstate a prior removal order when "an alien . . . expresses a fear of returning to the country designated in that order").  Immigration authorities accordingly released him "pending a reasonable fear interview with" an asylum officer.  Doc. 9-1 at 33.  Petitioner was still awaiting his reasonable fear interview when ICE revoked petitioner's release on October 6, 2025.[4]

---

[4] ICE's stated reason for revoking petitioner's release, as listed in the notice of revocation of release that it provided to petitioner for the first time a month after his detention, after he filed his habeas petition, was:
> [T]here are changed circumstances in your case.  ICE has determined that you can be expeditiously removed from the United States [] pursuant to the outstanding order of removal against you.  On November 10, 2021, you were served a Notice of Intent to Reinstate Prior Order, Form I-871, and you claimed fear of returning to your country of citizenship.  You were released on an Order of Supervision pending a reasonable fear interview with U.S. Citizenship and Immigration Services (USCIS).  As of October 6, 2025, you have no petition or applications pending with the service that would prevent your removal from the U.S. and your removal . . . is now imminent.

Doc. 9-1 at 33.  That was not a changed circumstance.  Petitioner did not have a petition or application pending because, as of October 6, 2025, petitioner had not been provided with a reasonable fear interview, which is the first step for seeking withholding of removal.  *See* 8 C.F.R. § 208.31 (withholding-only procedures for noncitizens whose removal orders are reinstated).

8

Moreover, petitioner cannot be "expeditiously removed" to Venezuela because, on October 30, 2025, an asylum officer found that petitioner had a credible fear of returning to Venezuela and petitioner is now in withholding-only proceedings before an immigration judge. *See Li Wu Lin v. I.N.S.*, 238 F.3d 239, 244 (3d Cir. 2001) ("[I]f an alien qualifies for withholding . . ., then the Attorney General is prohibited from deporting the alien to [the designated] country . . ."); *Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025) ("Petitioner has a statutory right not to be removed to El Salvador if he shows entitlement to withholding of removal, and the reasonable fear interview is a necessary step in the process for applying for that relief."); 8 C.F.R. § 241.8(e). Although "withholding-only relief is country-specific" and petitioner "still may be removed at any time to another country[,]" *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021), respondents do not state that they have plans to do so.[5]

Detention is permissible only if ICE can show that there is a significant likelihood of removal in the reasonably foreseeable future (or if there was a violation of the order of supervision, which respondents do not allege here). *See* 8 C.F.R. § 241.13(i). ICE re-detained petitioner without making that showing and without complying with its own regulations.

### b. ICE Did Not Afford Petitioner the Process He Was Due Under The Regulations.

The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) set out the procedures to be followed in revoking release, procedures that protect important due process rights. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution"). Those procedures include:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any

---

[5] Additionally, "last minute orders of removal to a [third] country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).

9

>evidence or information that he or she believes shows there is no significant likelihood he [will] be removed in the reasonably foreseeable future, or that he [] has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3); *see also Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025).

Respondents do not contest petitioner's assertion that ICE did not inform petitioner of the reason for his detention when they detained him. *See* Doc. 1 at ¶ 11 (noting that petitioner "was not provided with any specific reason or paperwork explaining the reason for his detention"); *see* Doc. 9. Respondents concede that the notice of revocation of release was not provided to petitioner until November 8, 2025, over a month after his detention and several days after petitioner filed his habeas action. They nonetheless argue that the government's delayed notification was "sufficiently close in time to be considered prompt for purposes of" the regulation. Doc. 9 at 3–4. But the regulation states that *the informal interview* is to be provided "promptly"; *the notification*, on the other hand, is to be provided "[u]pon revocation." 8 C.F.R. § 241.13(i)(3); *see also M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025) (finding that notice two days after revocation violated the regulation). Nor was the government's untimely informal interview of petitioner, a month after ICE detained petitioner, "prompt[]" for purposes of the regulation. *See, e.g.*, *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (informal interview provided twenty-seven days after revocation "cannot reasonably be construed as a 'prompt' informal interview.").

Respondents do not offer any explanation for the government's failure to provide timely notification to petitioner and its failure to timely conduct an informal interview of petitioner, in violation of its own regulation. Indeed, there is no indication that the government ever had any intention of timely complying with the regulation as required, as it provided the untimely notice only after being prompted by petitioner's filing of his habeas petition.

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v.*

10

*Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."). In *United States ex rel. Accardi v. Shaughnessy*, the Supreme Court reversed the dismissal of a habeas petition that alleged the Board of Immigration Appeals had failed to follow its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The Court held that, if the petitioner could prove the allegations in the petition, "he should receive a new hearing" and be "afforded the due process required by the regulations." *Id.* at 265–68. Recognizing this principle, other courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided . . ., [petitioner's] re-detainment was unlawful.").

The regulations here were promulgated to protect noncitizens' due process rights. *See Rombot*, 296 F. Supp. 3d at 388. Addressing a similar situation where a noncitizen's release was revoked pursuant to 8 C.F.R. 241.4(l), the court in *Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025), explained:

> "[T]he essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *see Jimenez v. Cronen*, 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that the "[f]undamental features of procedural due process are fair notice of the reasons for the possible loss of liberty and a meaningful opportunity to address them"). Likewise, under DHS's regulation, "in order to revoke conditional release, the Government must provide adequate notice" and give the noncitizen "an opportunity to respond to the reasons" offered for the revocation. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J.) (quoting 8 C.F.R. § 241.4(*l*)(1)).

*Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24,

2025).

ICE's untimely attempt to cure its violation of the regulations—by belatedly giving petitioner notice and an informal interview over a month after he was detained and only after petitioner filed his habeas petition—did not afford petitioner *meaningful* notice or opportunity to respond to ICE's revocation of his release. *See id.* at 34.[6] Additionally, the notice of revocation of release did not provide any specific changed circumstance applicable to petitioner. The notice generally informed petitioner that "ICE has determined that you can be expeditiously removed from the United States" and that "your removal from the U.S. is now imminent." Doc. 9-1 at 33. But petitioner was not served with that notice until November 8, 2025, and by then an asylum officer had conducted a credible fear interview with petitioner, the asylum officer found that petitioner had a credible fear of returning to Venezuela, and petitioner was referred on October 28, 2025 for proceedings before an immigration judge for a determination under 8 C.F.R. § 208.31(e) as to whether petitioner is entitled to withholding of removal, precluding his removal to Venezuela pending such further proceedings. To the extent the government's purported reason for revocation was that petitioner could be "expeditiously removed" to Venezuela, it would have known that was untrue by November 8, 2025, when it provided the notification to petitioner, because petitioner had been referred for further immigration proceedings on October 28.[7] As the court found in *Perez-Escobar*, in evaluating a notice that did not identify any actual changed circumstance in the petitioner's case, "ICE's failure to give Petitioner meaningful notice of the basis for its revocation of his release violated the regulation and due process." *Perez-Escobar v. Moniz*, 2025 WL 2084102, at *2.

///

///

///

---

[6] The notice is written in English and neither the notice itself nor any evidence proffered by respondents indicate whether the notice was translated into Spanish for petitioner.

[7] As noted, respondents do not contend that the government intends to remove petitioner to a third country.

12

### c. The Due Process Clause Requires a Hearing Prior to Being Re-Detained in Petitioner's Circumstances.

Petitioner further argues that the Due Process Clause bars ICE from re-detaining him without first providing a hearing where it must show that he is a flight risk or danger. *See* Doc. 1 at ¶¶ 107–17. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

#### i. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is

13

1  very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an

2  implicit promise that parole will be revoked only if he fails to live up to the parole conditions."

3  *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations

4  omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at

5  481–84.

6  Petitioner's release from detention in 2021 was similar. For nearly four years, it allowed

7  him to live at liberty in the United States, even though under an order of supervision. Among

8  other things, petitioner gained lawful employment, supported his family, and attended school.

9  *See* Doc. 1 at ¶¶ 7–8. He complied with all conditions of his release and was awaiting his

10  credible fear interview with an asylum officer so that he could proceed with seeking relief in his

11  immigration case. *See id.*; Doc. 9-1 at 33. He did so in reliance on immigration authorities'

12  implicit promise that he would be entitled to retain his liberty while his withholding-only

13  proceedings were pending so long as he did not violate the terms of his release. *Cf. Morrissey*,

14  408 U.S. at 482.

15  The Court finds that petitioner has a protected liberty interest in his release. *See*

16  *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

17  2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

18  is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

19  1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

20  been released have a strong liberty interest). The Court must therefore determine what process is

21  due before the government may terminate his liberty.

### ii. A Pre-Deprivation Bond Hearing Is Required.

23  Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*

24  *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are

25  evaluated using the *Mathews v. Eldridge* factors:

26  
27  
28  
> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the government's

14

> interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly four years, and during that time, built a life in the United States. His detention denies him that freedom.

Second, the risk of an erroneous deprivation of liberty is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbiter. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As another decision in this district found in evaluating a similar set of claims brought by a noncitizen who had been ordered removed, was subsequently released, and was then re-detained, "[t]he lack of any neutral review [under the regulations] creates a heightened risk of deprivation for Petitioner." *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *9 (E.D. Cal. Aug. 20, 2025).

The Ninth Circuit has explained the need for neutral review of the reasons for detention in a similar context, where a noncitizen was facing prolonged detention without a bond hearing and ICE had unilateral discretion whether to detain or release:

> Diouf's own case illustrates why a hearing before an immigration judge is a basic safeguard for aliens facing prolonged detention under § 1231(a)(6). The government detained Diouf in March 2005. DHS conducted custody reviews under § 241.4 in July 2005 and July 2006. In both instances, DHS determined that Diouf should remain in custody pending removal because his "criminal history and lack of family support" suggested he might flee if released. In February 2007, however, an immigration judge determined that Diouf was *not* a flight risk and released him on bond. If the district court had not ordered the bond hearing on due process grounds, Diouf might have remained in detention until this day.

15

1 *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011).

2  This reasoning applies even more forcefully here, where ICE failed to timely provide even the notice and interview required by its own regulations. *See Yang*, 2025 WL 2791778, at *9 ("[R]espondents [] failed to provide the informal interview required under the governing regulations. This fact suggests that the procedures created by the regulatory framework have proven insufficient to meaningfully mitigate the risk of erroneous deprivation of liberty in this case."). ICE revoked petitioner's release on the grounds that his removal was reasonably foreseeable, but it did not provide petitioner the process required by its own regulations, it forced petitioner to file a habeas petition to obtain relief, and the government has failed to identify any evidence that petitioner's removal was actually reasonably foreseeable at any point. In circumstances like these, the risk of erroneous deprivation is high. *See Yang*, 2025 WL 2791778, at *9.

 Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in revoking parole without some informal procedural guarantees."). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

 On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before he was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

16

1 kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has
2 held that Due Process requires a pre-deprivation hearing before those released on parole from a
3 criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The
4 same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.
5 Numerous district courts have held that these principles extend to the context of immigration
6 detention.[8] Petitioner's re-detention without such a hearing violates the Due Process Clause.

7 ///
8 ///
9 ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///

---

[8] *See, e.g.*, *Yang*, 2025 WL 2791778, at *7–10; *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

**IV.    Conclusion and Order**

Accordingly,

1. The petition for writ of habeas corpus, Doc. 1, is GRANTED.
2. Respondents are ORDERED to release petitioner immediately.
3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
4. The Clerk of Court is directed to close this matter.

IT IS SO ORDERED.

Dated:   November 14, 2025

_____
UNITED STATES DISTRICT JUDGE